UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                       :

JOHN SATCHELL,                         :
                                         :

                        Plaintiff,      :            1:23-cv-11119-GHW
                                         :

           -against-            :          MEMORANDUM
                                         :         OPINION & ORDER

THE CITY OF NEW YORK, *et al.*,    :
                                         :

                        Defendants.    :
-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2026

GREGORY H. WOODS, United States District Judge:

      In October 2019, Plaintiff John Satchell was arrested and charged with first degree murder. Mr. Satchell was taken to Riker's Island following his arraignment. There, he was subjected to a strip search. Mr. Satchell claims that the search was unconstitutional because the officers did not have a reasonable suspicion that he was carrying weapons or contraband. Over the course of the ensuing years of his pretrial detention, Mr. Satchell asserts that he was subjected to other allegedly unconstitutional searches. But he provides no details about any searches other than the one conducted when he first arrived at the jail.

      Mr. Satchell brought this action against the City of New York and others, alleging, among other things, that he had been subjected to an illegal strip search. Since the case was filed, Mr. Satchell has amended his complaint several times: in his current complaint, he asserts claims against the City of New York on behalf of himself and a putative class of inmates who were allegedly subjected to what he describes as an illegal policy to strip search inmates when they arrive at Riker's Island following their arrest without reasonable suspicion. Defendants moved to dismiss Plaintiff's claims on various grounds, including an argument that certain of Plaintiff's claims under 42 U.S.C. § 1983 are time-barred, and that his other allegations constitute no more than the kind of

"unadorned, the-defendant-unlawfully-harmed-me accusation" that does not suffice to state a claim. Because the only search that Mr. Satchell describes with any degree of particularity is barred under the statute of limitations and his complaint fails to provide factual details regarding any other search, Defendants' motion to dismiss is GRANTED.

I.      BACKGROUND

A.  Facts[1]

Mr. Satchell was arrested on or about October 8, 2019, and charged with murder in the first degree. Dkt. No. 41 ("Compl." or "Complaint") at 5.[2]  After he was arraigned, Mr. Satchell was "placed in the custody of the Riker's Island/V.C.B.C. Sheriff or C/O's."[3]  *Id.*  Mr. Satchell asserts that he was strip searched "in accordance with the policy, custom, procedure and practice of the defendants . . . ."  *Id.*  He alleges that they did so "without inquiry into the nature of the charges, the characteristics of the arrestee, or the circumstances[] of the arrest, and without the establishment of a reasonable suspicion to believe that the above-named Plaintiff/Mr. Satchell was armed, dangerous, or possessed weapons."  *Id.*  Mr. Satchell writes that he was ordered to submit to a "visual inspection and search of my genital[s] and anal cavity."  *Id.* at 12.  Officers from the Department of Corrections observed the search, "while they talked and laughed."  *Id.*  No contraband was found on Mr. Satchell during that search.

Mr. Satchell remained in pretrial detention over the course of the next 58 months.  His complaint suggests that he was subject to other strip searches during that period, but he does not

---

[1]  Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2]  Page references in the complaint refer to the ECF pagination.
[3]  The Court understands that references in the Complaint to "V.C.B.C." are to the Vernon C. Bain Correctional Center, a barge formerly used by the New York City Department of Corrections to house pretrial detainees.

provide any detail regarding the searches or the circumstances in which they arose.[4]  Instead, he complains broadly that the defendants implemented a "plainly unconstitutional" policy to strip search inmates "wholly absent reasonable suspicion."  *Id.* at 10.  He does not describe the circumstances of any strip search other than the one that was allegedly conducted on October 8, 2019, however.  He does not provide the dates, locations or other circumstances of any such searches.  Rather, he broadly characterizes such searches as the result of an "unlawful and unconstitutional" policy to strip search inmates "absent the requisite reasonable suspicion, or any other legally sufficient justification."  *Id.* at 12.

As a result of the defendants' alleged misconduct, Mr. Satchell claims that he has suffered emotional harm and mental anguish.  *Id.* at 13.  He demands $15,000,000 in compensatory damages plus $15,000,000 in punitive damages for himself and a purported class, as well as an award of "reasonable attorney fees and costs to Plaintiff . . . ."  *Id.*  He also asks that the Court grant him and the putative class injunctive and declaratory relief.  *Id.*

## B.  Procedural History

Mr. Satchell commenced this action on December 21, 2023, naming the Department of Corrections; Louis Molina, Commissioner; and Ms. Ford, Warden of the V.C.B.C. as defendants. Dkt. No. 1.  Chief Judge Laura T. Swain, to whom the case was then assigned, issued an order in response to the initial complaint.  Dkt. No. 5 (the "Order to Amend").  The Order to Amend dismissed Plaintiff's claims to the extent that he sought the Court's intervention in his state court

---

[4]  Mr. Satchell describes the policy as one to conduct strip searches only prior to or following an arraignment.  Compl. at 11 ("Pursuant to this uniform strip search policy, and knowing acquiescence [to] the same by Queens County – Rikers Island – Department of Corrections and the name[d] Plaintiff /Mr. Satchell was the victim of routine strip searches policy, practice, or procedure, *conducted prior to or following their arraignments*, without inquiry into or establishment of reasonable suspicion." (emphasis added)).  That the alleged policy was one that applied only after an inmate was first committed to the facility following an arraignment is consistent with the fact that Mr. Satchell's complaint only describes with specificity the strip search that took place when he first arrived at Riker's Island.  Construing Mr. Satchell's complaint to raise the strongest arguments it suggests, however, the Court accepts, as Defendants have, that Mr. Satchell intends to assert a claim based on other, undescribed searches.

proceedings under the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* at 3–4. The Order to Amend also dismissed any claims related to the conditions of Mr. Satchell's confinement because they were inadequately pleaded. *Id.* at 6–7. However, Mr. Satchell was granted leave to amend the complaint to cure those deficiencies. *Id.*

The Order to Amend also dismissed Mr. Satchell's claims involving alleged strip searches. Chief Judge Swain wrote:

> Here, Plaintiff does not allege sufficient facts to state a viable claim. He does not allege any facts regarding the context of the searches. Plaintiff does not allege why he was searched, how the searches were conducted, or any facts suggesting that the searches were performed to intentionally humiliate or abuse him. Nor does he allege or name as a defendant the individual correction official who conducted each of the searches.

*Id.* at 5. Chief Judge Swain granted Mr. Satchell leave to amend the complaint to cure those deficiencies. *Id.*

The Order to Amend also dismissed the claims against former Commissioner Molina and former Warden Ford, because the complaint alleged no facts regarding their individual involvement in the incidents that Mr. Satchell described. *Id.* at 7–8. Construing Mr. Satchell's complaint to raise the strongest arguments it suggested, the order added the City of New York as a defendant. *Id.* at 8, 12.

The Order to Amend elaborated on Mr. Satchell's obligation to plead detailed facts to support his claims. *Id.* at 10–11. The order advised Mr. Satchell as follows: "Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint." *Id.* at 12.

Mr. Satchell filed his first amended complaint on August 21, 2024. Dkt. No. 6. In it, he asserted claims against the City of New York and a number of unidentified "John Doe" defendants. Mr. Satchell again asserted claims related to allegedly unconstitutional strip searches. He also

described facts regarding the conditions of his confinement.  Because Mr. Satchell named "John Doe" defendants in his amended complaint, the Court issued two orders directing him to provide additional information to help identify those individuals.  *See* Dkt. No. 8 (September 27, 2024); Dkt. No. 14 (October 25, 2024).

On December 4, 2024, on his own initiative, Mr. Satchell filed a second amended complaint. Dkt. No. 18.  The second amended complaint again named the City of New York and a number of "John Doe" defendants.  Mr. Satchell again alleged that he had been illegally strip searched.  *Id.* at 2, 10.  He also alleged that he was subjected to unlawful conditions of confinement, because, among other things, COVID existed at the facility and he was placed in a unit with gang members.  *Id.* at 10–11.  On December 12, 2024, the Court again directed Mr. Satchell to provide information regarding the identities of the "John Doe" defendants.  Dkt. No. 19.  Mr. Satchell responded to that order on January 2, 2025.  Dkt. No. 22.  On January 6, 2025, the Court issued a *Valentin* order, directing the Corporation Counsel of the City of New York to identify the corrections officers described by Mr. Satchell so that they could be named in the complaint.  Dkt. No. 23.  After one requested extension, the City requested more information to help them identify the officers, Dkt. No. 29, and the Court directed Mr. Satchell to provide that information, Dkt. No. 30.

On April 21, the Court set a schedule for the defendants to move to dismiss the complaint. Dkt. Nos. 32, 35.  Before the motion was filed, Mr. Satchell filed another document asserting claims against the defendants—for the first time raising purported class claims.  The Court responded by order on April 28, 2025.  Dkt. No. 37.  The Court denied Mr. Satchell's request for the certification of a class.  The Court also advised Mr. Satchell about the limitations on, and effect of, amendments to the complaint:

> If Plaintiff would like to request permission, he must make a motion to amend the complaint and attach the proposed amended complaint.  If this amended complaint were accepted, it would replace, not supplement, his original complaint,

which means that his previous allegations would be deemed withdrawn if they are not repeated in his new amended complaint.

*Id.* at 2.

On April 28, 2025, Defendants filed a motion to dismiss Mr. Satchell's second amended complaint. Before his opposition was due, Mr. Satchell filed his third amended complaint on May 16, 2025. Compl. It is the operative complaint in the case.[5] Dkt. Nos. 43, 44. As a result of Mr. Satchell's amendment to the complaint, the Court denied Defendants' April 28, 2025 motion to dismiss as moot.

In the Complaint, Mr. Satchell asserts claims against "Queens County" and "Riker's Island/V.C.B.C." Compl. at 5–6. The Court understands that Mr. Satchell is asserting claims against the City of New York. The Complaint does not name any individual defendants. In his Complaint, Mr. Satchell asserts claims regarding allegedly unlawful strip searches on behalf of himself and a putative class consisting of all of the pretrial detainees at Riker's Island between 2019 and 2024.

On September 19, 2025, Defendants filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dkt. No. 56 (notice of motion); Dkt. No. 57 ("Mem.").

---

[5] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g.*, *Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff . . . appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint. Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . . Since pro se civil rights complaints should be read with generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)). Here, the Court expressly advised Mr. Satchell several times that an amended complaint would "completely replace, not supplement" the earlier-filed complaint. *See* Dkt. No. 5 (instructing Mr. Satchell that an amended complaint would "completely replace, not supplement, the original complaint"); Dkt. No. 37 (advising Mr. Satchell that "If this amended complaint were accepted, it would replace, not supplement, his original complaint, which means that his previous allegations would be deemed withdrawn if they are not repeated in his new amended complaint.") Because Plaintiff has opted not to reassert his claims related to conditions of his confinement or any individual claims against "John Doe" defendants, those claims have been abandoned.

In their motion, Defendants argued that any strip-search claim accruing before December 21, 2020 (three years prior to the date of Mr. Satchell's initial complaint) is time-barred. They pointed out that the only search described with any particularity took place before that date. Defendants argued that the complaint fails to plead nonconclusory facts about scope, manner, justification, or place of any other search sufficient to state a plausible claim. They also challenged Plaintiff's ability to pursue a class action, given that he is not a lawyer.

Mr. Satchell filed two responses to the motion. On September 23, 2025, Mr. Satchell wrote a letter in which he categorically rejected the motion. Dkt. No. 60. On October 1, 2025, he filed a memorandum of law in opposition to the motion. Dkt. No. 61. Neither submission supplied additional details regarding the alleged strip searches. Defendants filed a reply on November 3, 2025. Dkt. No. 67. In it, they pointed out that Mr. Satchell had failed to address their principal arguments that certain of his claims were time barred, and that he had not plausibly stated a claim with respect to the allegedly illegal strip searches.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir. 1994)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F.Supp.3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III. DISCUSSION

### A. Class Action Allegations

As an initial matter, "[a] pro se prisoner cannot prosecute a class action." *Narvaez v. City of New York*, No. 16 CIV. 1980, 2017 WL 1535386, at *11 (S.D.N.Y. Apr. 17, 2017). Plaintiff purports to assert claims regarding the defendants' alleged strip search policy on behalf of a class of similarly situated inmates. However, because he is proceeding *pro se*, Mr. Satchell cannot maintain a class action. *See Rodriguez v. Eastman Kodak Co.*, 88 Fed. App'x. 470, 471 (2d Cir. 2004) ("[I]t is well established that a pro se class representative cannot adequately represent the interests of other class

9

members.") (internal quotation marks omitted); *see also Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998). Therefore, the Court dismisses all claims made by Plaintiff on behalf of the putative class.

### B. Section 1983

Mr. Satchell advances claims under 42 U.S.C. § 1983 because he was allegedly subjected to unconstitutional strip searches. He asserts that the City of New York should be held liable for the implementation of the policy that resulted in those searches. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Defendants have moved to dismiss Mr. Satchell's Section 1983 claims because, Defendants argue, they are barred at least in part by the statute of limitations. In addition, Defendants argue that Mr. Satchell failed to adequately plead that any unconstitutional search occurred outside of the statute of limitations. The Court addresses each argument in turn.

#### i. Statute of Limitations

Any claim arising from a search that was conducted prior to December 21, 2020 is not timely. "Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted) (first citing *Owens v. Okure*, 488 U.S. 235, 249–51 (1989); then citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); and then citing N.Y. C.P.L.R. § 214 (McKinney 2013)); *see also Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) ("Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years."). Although "the statute of limitations period is determined by reference to state law, the determination of when a claim accrues is governed by federal law." *Mitchell*, 377 F. Supp. 2d at 371. For Section 1983 claims, "accrual occurs when the plaintiff knows

or has reason to know of the injury which is the basis of his action." *Hogan*, 738 F.3d at 518 (quoting *Pearl*, 296 F.3d at 80). "An unlawful search claim 'accrues at the time of the search.'" *Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016) (quoting *McClanahan v. Kelly*, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014)).

Mr. Satchell filed his complaint on December 21, 2023. As a result, any claim that accrued before December 21, 2020 falls outside of the statute of limitations. The sole search that Mr. Satchell describes with any particularity occurred on October 8, 2019—more than a year before December 21, 2020. Thus, Mr. Satchell cannot pursue a claim based on that alleged search.

### ii. No Timely Searches Are Adequately Pleaded

Mr. Satchell has not adequately pleaded a claim based on any search that falls within the statute of limitations. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). As described above, Mr. Satchell's complaint contends that he was subjected to allegedly unconstitutional searches. But he provides no factual detail to support the threadbare assertion that his rights were violated. *See, e.g.*, Compl. at 4 ("[T]he defendants instituted and affirmed a policy, practice, procedure and custom pursuant to which strip searches of all pretrial detainees held in custody of Riker's Island are conducted in the absence of reasonable suspicion as otherwise required and prescribed by the Constitution and laws of the United States . . . ."). Mr. Satchell's conclusory allegations are insufficient to state a claim.

As an aside, Mr. Satchell's contention that Riker's Island's alleged policy to strip search inmates in the absence of reasonable suspicion violates the Fourth Amendment appears to be based on an outdated and now incorrect understanding of the law. In 2012, the Supreme Court issued its

11

opinion in *Florence v. Board of Chosen Freeholders of Burlington County*, 566 U.S. 318 (2012).  In *Florence*, "the Court held, absent 'substantial evidence' of an 'exaggerated' response to penological concerns, the 'security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband.'"  *Murphy v. Hughson*, 82 F.4th 177, 185 (2d Cir. 2023).

*Florence* partly abrogated the prior law of the Second Circuit, "which had premised the legitimacy of intake policies, and thus penological decision-making, on the distinction between misdemeanor and felony detainees."  *Id.*  After *Florence*, "[u]nless there is 'substantial evidence' of an 'exaggerated' response, we must now defer to corrections policies that apply to misdemeanor and felony detainees alike.  Specifically, under *Florence*, 'a blanket policy of conducting visual body cavity searches on new inmates [is] constitutional, even for misdemeanor arrestees where there is no reason to suspect the arrestee would have contraband.'"  *Id.* (internal citations omitted).  Mr. Satchell's categorical assertions that the defendants maintain a blanket policy of visual body searches on new inmates without reasonable suspicion does not appear to raise a constitutional claim under existing law.

### iii.   Municipal Liability

Mr. Satchell has failed to plead a viable Section 1983 claim against the City of New York.  Municipalities are "not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Plaintiffs seeking to hold a municipality liable under Section 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  "[T]he City cannot be liable under Monell where Plaintiff cannot establish a violation of his constitutional rights."  *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d

Cir. 2013) (internal quotations omitted).  Mr. Satchell has not adequately pleaded a *Monell* claim because he has not adequately pleaded an underlying violation of his constitutional rights.

### C.  Supplemental Jurisdiction

Having dismissed all of Mr. Satchell's federal claims, the Court declines to accept supplemental jurisdiction over any state law claims that may be implied from his complaint.  When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'"  *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. CONST. art. III, § 2)).  Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."  *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).  Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Here, subsection (3) applies because the Court has dismissed all the claims over which it had original jurisdiction.  Thus, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted).  Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726).  "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (internal quotation marks and citation omitted)).  This is the usual case:  the Court has evaluated the values set forth in *Gibbs* in the context of this case and concludes that they support the Court's decision to decline supplemental jurisdiction.

IV.    **LEAVE TO AMEND**

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave [to amend] when justice so requires."). It is true that leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted). The Court has dismissed Plaintiff's Section 1983 claims related to his alleged strip searches once before. Nonetheless, given Plaintiff's *pro se* status, and the fact that this is the Court's first ruling with respect to the effect of the statute of limitations on his claims, the Court will grant Mr. Satchell leave to amend the complaint once again to cure the deficiencies identified in this opinion. To be very clear, the Court only grants Mr. Satchell leave to replead the claims asserted in the current operative complaint. The Court does not grant him leave to pursue claims that were not previously asserted in this action. Any amended complaint must be filed no later than fourteen days from the date of this order.

### V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 56 and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: March 16, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

15